UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|-------------------------|------|------------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|------------------------|---------------------|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

G. Warren Bleeker
Gary Nelson

Attorneys Present for Defendants:

Michael Lynch

**Proceedings:**  PLAINTIFF LODESTAR ANSTALT MOTION FOR SANCTIONS
(Dkt. 69, filed July 10, 2017)

DEFENDANT BACARDI LIMITED'S MOTION TO DISMISS
(Dkt. 70, filed July 17, 2017)

PLAINTIFF LODESTAR ANSTALT MOTION TO DISMISS
COUNTERCLAIMS (Dkt. 72, filed July 17, 2017)

## I.    INTRODUCTION

On August 25, 2016, plaintiff Lodestar Anstalt ("Lodestar") filed a complaint against defendants Bacardi & Company Limited ("BCL"), Bacardi U.S.A., Inc. ("BUSA"), and Bacardi Limited (collectively, "Bacardi" or "defendants"). Dkt. 1. ("Compl."). Lodestar alleges four claims: (1) trademark infringement in violation of 15 U.S.C. § 1114, (2) unfair competition in violation of 15 U.S.C. § 1125, (3) unfair competition under Cal. Civ. Code §§ 17200 et seq., and (4) unfair competition in violation of California common law. Id.

On November 16, 2016, the Court granted defendants' motion to stay this case in light of pending motions for summary judgment in a related trademark opposition proceeding in front of the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB"). Dkt. 31. On February 22, 2017, the Court lifted the stay pursuant to the parties' stipulation because TTAB issued an order denying the parties' cross-motions for summary judgment. Dkt. 38.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|---|---|---|---|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

On April 24, 2017, the Court granted defendants' motion to transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Dkt. 49. On May 18, 2017, Lodestar filed a motion for reconsideration of the Court's transfer order. Dkt. 51. Lodestar argued that transfer to Florida was improper because: (a) the transferee court must have personal jurisdiction over all defendants, (b) defendants represented that the Florida court had personal jurisdiction over "Bacardi," (c) but, in the Florida court, Bacardi Limited moved to dismiss the claims against it for lack of personal jurisdiction. Id. On May 23, 2017, the Court denied Lodestar's motion for reconsideration because, upon the transfer, the Court no longer had jurisdiction over the case. Dkt. 56.

On June 27, 2017, the U.S. District Court for the Southern District of Florida (the "Florida Court") granted Lodestar's motion to retransfer this action from the Southern District of Florida to this Court. Dkt. 59 ("Florida Order"). The Florida Court found: "It seems that based on the Bacardi Entities' representations, the Central District of California did not analyze whether it had personal jurisdiction over BCL, BUSA and Bacardi Ltd., but, instead, accepted Bacardi Entities' apparent but misleading concession that they were subject to personal jurisdiction in the Southern District of Florida." Id. at 14–15. As a result, the Florida Court concluded that it was compelled to retransfer the case because Bacardi failed to demonstrate that that the Florida Court had personal jurisdiction over all defendants. Id. at 15–16.

On June 27, 2017, BCL and BUSA filed an answer to Lodestar's complaint and asserted three counterclaims for partial cancellation of Lodestar's marks. Dkt. 66 ("Answer").

On July 10, 2017, Lodestar filed a motion for sanctions against defendants. Id. at 69-1 ("Sanctions Mot."). Defendants filed their opposition to Lodestar's motion on July 17, 2017, dkt. 73 ("Sanctions Opp'n"), and Lodestar filed its reply on July 24, 2017, dkt. 78 ("Sanctions Reply").

On July 17, 2017, Bacardi Limited filed a motion to dismiss Lodestar's claims for lack of personal jurisdiction and failure to state a claim on which relief may be granted. Dkt. 70 ("Bacardi MTD"). On July 24, 2017, Lodestar filed its opposition. Dkt. 77 ("Opp'n to Bacardi MTD"). On July 31, 2017, Bacardi Limited filed its reply. Dkt. 81 ("Reply ISO Bacardi MTD").

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|---|---|---|---|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

On July 17, 2017, Lodestar filed a motion to dismiss BCL and BUSA's counterclaims, or alternatively to strike the counterclaims. Dkt. 72-1 ("Lodestar MTD"). On July 24, 2017, BCL and BUSA filed their opposition to Lodestar's motion. Dkt. 75 ("Opp'n to Lodestar MTD"). Plaintiff filed its reply on July 31, 2017. Dkt. 80 ("Reply ISO Lodestar MTD").

On August 9, 2017, Lodestar filed a notice with the Court that the U.S. Patent and Trademark Office ("USPTO") accepted under Section 71 of the Trademark Act, 15 U.S.C. § 1141k, Lodestar's registration of the two trademarks at issue in this case. Dkt. 82.

The Court heard oral argument on August 14, 2017. Having carefully considered the parties' arguments, the Court rules as follows.

## II.     BACKGROUND

Lodestar is a Lichtenstein company with its principal place of business in Cyprus. Compl. ¶ 1. Lodestar owns U.S. Trademark Registration No. 4,033,238 for UNTAMED and design in International Classes 32 and 33 (the "'238 Mark"). Id. ¶ 8. This registration has a priority date of July 16, 2009 and a registration date of October 4, 2011. Id. Lodestar also owns U.S. Trademark Registration No. 4,033,239 for UNTAMED in International Classes 32 and 33 (the "'239 Mark"), which also has a priority date of July 16, 2009 and a registration date of October 4, 2011. Id. ¶ 9. The '238 and '239 Marks are referred to collectively as the "UNTAMED marks." Id.

Since 2009, Lodestar has used the UNTAMED marks for its Irish whisky, which has been imported and distributed throughout the United States. Id. ¶¶ 10, 11. Since 2014, Lodestar has used the UNTAMED marks on rum products in the United States. Id. ¶ 12.

Bacardi Limited is located in Bermuda and is the parent company of subsidiaries BCL and BUSA. Id. ¶ 4. BCL is a Lichtenstein company with its principal place of business in the Bahamas. Id. ¶ 2. BUSA is a corporation organized under Delaware laws and maintains its principal place of business in Miami, Florida. Id. ¶ 3. Bacardi Limited purports to be "the largest privately held spirits company in the world." Id. ¶ 15. BUSA is the import, sales, and marketing arm of Bacardi Limited in the United States. Id. ¶ 3. On information and belief, Lodestar alleges that Bacardi Limited controls defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

marketing strategies through its "Bacardi Global Marketing Principles." Id. ¶ 17. On information and belief, Lodestar avers that Bacardi Limited trains its commercial teams and employees and marketing principles and holds employees accountable for complying with those principles, including taking corrective actions for violations of those principles. Id. ¶ 17, 19. Bacardi Limited asserts that it has a "robust processes in place to review and approve marking materials" for Bacardi products, including rum. Id. ¶ 18. On information and belief, Lodestar alleges that Bacardi Limited was ultimately responsible for devising and implementing the UNTAMEABLE marketing plan that BUSA uses in the United States in connection with the import, offer for sale, and sale of rum products. Id. ¶ 21.

According to Lodestar, Bacardi infringed Lodestar's "trademarks, goodwill, and entire backstory, by initiating its own substantial marketing campaign featuring almost the identical mark, UNTAMEABLE, on the same or related alcohol products as Lodestar uses its UNTAMED marks, and with the very marketing and branding themes as Lodestar had used." Id. ¶ 20. On July 17, 2013, BCL filed a trademark application for the mark BACARDI UNTAMEABLE in International Class 33 for "alcoholic beverages except beers" and began a substantial marketing campaign using the mark. Id. ¶¶ 22–23. When BCL's application for the UNTAMEABLE mark first appeared in the Federal Register in early 2015, Lodestar filed an opposition to the registration of the mark. Id. ¶ 33.

On information and belief, Lodestar avers that Bacardi had actual knowledge of Lodestar's UNTAMED mark and advertising campaign in connection with rum because, at a "show" in Berlin in 2012, Lodestar displayed its UNTAMED mark and the theme of its campaign. Id. ¶ 29. At least one Bacardi representative attended the 2012 Berlin show and spent time at the Lodestar booth. Id. ¶ 30. Bacardi was on *constructive* notice of the UNTAMED mark for nearly five years. Id. ¶ 31. On information and belief, Lodestar alleges that Bacardi had *actual* knowledge of the UNTAMED marks before Bacardi adopted the UNTAMEABLE mark and "copycat advertising campaign" in 2013. Id. ¶¶ 31–31. Given this knowledge, Lodestar avers that Bacardi's use of the UNTAMEABLE mark in an infringing manner was willful and intended to deprive Lodestar of its rights to the UNTAMED mark. Id. ¶ 34

On information and belief, Lodestar alleges that "Bacardi copied its entire advertising campaign from Lodestar's pre-existing UNTAMED advertising campaign." Id. ¶ 26. Lodestar's UNTAMED marks "tell the story" of the Irish diaspora who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL    'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. |

remained defiant even after they were forced to leave Ireland following the 1691 Treaty of Limerick. Id. The Bacardi advertising campaign using the UNTAMEABLE mark is premised on the idea that Bacardi remained defiant after being exiled from Cuba. Id. Bacardi's use of the UNTAMEABLE mark "to tell a nearly identically-themed story" is likely to confuse consumers as to the source, ownership, sponsorship, or affiliation of the goods among an "appreciable percentage of the relevant consuming public." Id. ¶ 27. On information and belief, Lodestar avers that Bacardi has spent tens of millions of dollars on its UNTAMEABLE campaign, resulting in hundreds of millions of impressions on consumers and potential consumers. Id. ¶¶ 23–25.

In its answer, BCL and BUSA allege, on information and belief, that Lodestar has abandoned the '238 Mark because Lodestar has never made bona fide lawful use, and has no intention of making bona fide lawful use, of the '238 Mark in commerce in connection with any Class 32 or Class 33 Goods except for whiskey or distilled spirits. Answer, Counterclaims ¶ 8. As a result, BCL and BUSA contend that Lodestar's registration for the '238 Mark should be partially cancelled with respect to all goods except whiskey or distilled spirits, or all goods for which Lodestar lacks a bona fide lawful use in commerce. Id. ¶¶ 9–10.

Similarly, BCL and BUSA allege, on information and belief, that Lodestar has abandoned the '239 Mark because Lodestar has never made bona fide lawful use, and has no intention of making bona fide lawful use, of the '238 Mark in connection with any Class 32 or Class 33 Goods. Id. ¶ 13. Lodestar has only made "small isolated shipments of rum bearing the UNTAMED mark, which does not constitute *bona vide* use in commerce under the law." Id. As a result, BCL and BUSA contend that Lodestar's registration for the '239 Mark should be cancelled. Id. ¶ 14. Alternatively, if Lodestar has made bona fide use in commerce of the '239 Mark, or demonstrated the intent to do use, BCL and BUSA contend that Lodestar has abandoned said mark with respect to all other Class 32 and Class 33 Goods and the registration for the '239 Mark should be partially cancelled. Id. ¶¶ 16–17.

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

## III.    MOTIONS TO DISMISS

### A.    Legal Standards

#### 1.    Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). The plaintiff's alleged version of the facts is taken as true for purposes of the motion if not directly controverted. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant adduces evidence controverting the allegations, however, the plaintiff may not rely on his pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quotation marks omitted). Any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." AT & T, 94 F.3d at 588–89 (quotation marks omitted).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55.

California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

#### a.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  Whether a defendant's contacts are sufficiently substantial, continuous, and systematic for an exercise of general jurisdiction depends upon a defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011) (quotation marks omitted); see also Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) ("Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.").  Occasional sales to residents of the forum state are insufficient to create general jurisdiction.  See Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986).  This standard is exacting, "because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).

#### b.    Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities.  Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993).  The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test. Id. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478–79. A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state. Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008). "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more. Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

In tort cases, by contrast, courts conduct a "purposeful direction" analysis. Schwarzenegger, 374 F.3d at 802. Purposeful direction is analyzed under the "effects test." Calder v. Jones, 465 U.S. 783, 787–89, (1984); Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). Under the "effects" test, "the defendant must have allegedly: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting Schwarzenegger, 374 F.3d at 803). A foreign act with foreseeable effects in the forum state does not always give rise to specific jurisdiction; there must be "something more." Bancroft & Masters, 223 F.3d at 1087. "'[S]omething more' is what the Supreme Court described as 'express aiming' at the forum state." Id. The "express aiming" requirement is satisfied "when defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Id.; see also Dole Food, 303 F.3d at 1111.

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  '**O**'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  <u>Roth</u>, 942 F.2d at 623.

### 2.    Failure to State a Claim

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a pleading.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting <u>Balisteri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u>

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the pleading, as well as all reasonable inferences to be drawn from them.  <u>Pareto v. FDIC</u>, 139 F.3d 696, 699 (9th Cir. 1998).  The pleading must be read in the light most favorable to the nonmoving party.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>see Moss v. United States Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 679.

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|---|---|---|---|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the pleading (e.g., facts presented in briefs, affidavits, or discovery materials). <u>In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996), <u>rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." <u>See</u> Charles A. Wright & Arthur R. Miller, 5 Fed. Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." <u>Jones v. Community Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996).

## B. Bacardi Limited's Motion to Dismiss

### 1. Personal Jurisdiction

Bacardi Limited argues that the Court lacks general personal jurisdiction over it. Bacardi MTD at 5. Lodestar appears to concede this point as it argues only that Bacardi Limited is subject to specific personal jurisdiction in California. Opp'n to Bacardi MTD at 19. Thus the Court addresses only whether it may exercise specific personal jurisdiction over Bacardi Limited.

The Court first considers whether Bacardi Limited has waived personal jurisdiction. The defense of lack of jurisdiction over the person is waived if it is neither made by motion under Rule 12 nor included in a responsive pleading. <u>See</u> Fed. R. Civ. P. 12(h)(1); <u>see also</u> <u>Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 704 (1982). A defense of improper venue "may be waived as a result of the course of conduct pursued by a party during litigation." <u>Peterson v. Highland Music, Inc.</u>, 140

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

F.3d 1313, 1318 (9th Cir. 1998). Lodestar argues that Bacardi Limited waived personal jurisdiction by moving to stay proceedings in this Court pending the TTAB's ruling and by moving to transfer venue. Opp'n to Bacardi MTD at 13, 16. However, "[f]iling a non-Rule 12 motion—such as *motion to stay or transfer*—will not itself trigger waiver under Rule 12(h)(1)." Cal. Prac. Guide Fed. Pro. Before Trial Ch. ¶ 9:30.1 (Rutter Group) (emphasis added); cf. Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1475 (9th Cir. 1988) (citing approvingly to Butler v. Judge of the U.S. District Court, 116 F.2d 1013, 1016 (9th Cir. 1941), which "rejected the argument that the motion to stay raised a matter which must be raised in an answer or waived under Rule 12(b). The [Butler] court held that the motion to stay did not seek relief provided under Rule 12(b) and hence was not subject to that Rule's restrictions.").

> It is true that when a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter, but a motion to stay proceedings (or to extend the time to answer) signals only that a defendant wishes to postpone the court's disposition of a case. Far from indicating that a defendant intends to defend a suit on the merits, a motion to stay can serve to indicate the opposite—that a defendant intends to seek alternative means of resolving a dispute, and avoid litigation in that jurisdiction.

Mann v. Castiel, 681 F.3d 368, 374 (D.C. Cir. 2012) (citation and quotation marks omitted). The Court therefore concludes that defendants' motion to stay did not waive Bacardi Limited's right to contest the Court's personal jurisdiction.

### a.     Purposeful Direction

"It is well-settled that claims for trademark infringement sound in tort." Friendly Family Prods. LLC v. Little House on Prairie, Inc., No. 08-cv-06602-MMM-CW, 2009 WL 10669833, at *4 n.28 (C.D. Cal. Jan. 12, 2009); see, e.g., Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (noting that trademark infringement is "akin to a tort case" for purposes of determining jurisdiction). Therefore, the Court addresses the first prong of the specific jurisdiction test under the purposeful direction approach for suits sounding in tort. To satisfy the purposeful direction "effects" test, "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo!, 433 F.3d at 1206. "An intentional act is an external manifestation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe, 704 F.3d at 674.

Here, Lodestar alleges that Bacardi Limited committed an intentional act because Bacardi Limited used the BACARDI UNTAMEABLE mark in global marketing, which included marketing to consumers in California, and controlled the use of the BACARDI UNTAMEABLE mark in global marketing. Opp'n at 16–22. In support of its argument that Bacardi Limited used the BACARDI UNTAMEABLE mark in global marketing, Lodestar points to the initial declaration of Lynette Exposito, a paralegal for BUSA. Id. at 17–18. Exposito testified in support of defendants' motion to transfer venue that: (a) "Bacardi began using the BACARDI UNTAMEABLE mark to promote the sale of its products in November 2013"; (b) "Bacardi spent over $14 million in advertisements in the U.S. featuring the BACARDI UNTAMEABLE mark"; and (c) "Bacardi has featured the BACARDI UNTAMEABLE mark in national media campaigns," including on major national networks. Dkt. 44, First Declaration of Lynette Exposito ("Exposito Decl. I.") ¶ 5. Exposito defined "Bacardi" collectively to include Bacardi Limited. Id. ¶ 1.[1] In support of its argument that Bacardi Limited exercised control over marketing, Lodestar points to the following evidence:

- On its website, Bacardi Limited's states that it controls the company's marketing campaigns and Bacardi Limited issued press releases announcing the launch the Untameable campaign globally. See, e.g., dkt. 77-3, Declaration of Michael A. Koplow ("Koplow Decl.") ¶ 5 & Ex. 6 ("Our global marketing function has centralized the production of major campaigns and marketing programs, thereby enabling us to present a global image of our core brands."); id. ¶ 3 & Ex. 4 (press release, featured on the Bacardi Limited website, announcing the launch of the Untameable campaign "globally"); id. ¶ 12 & Ex. 13 (press release, featured on the Bacardi Limited website, announcing the launch of the Untameable bus tour).

---

[1] Notwithstanding this collective definition, in a declaration filed in support of Bacardi Limited's motion to dismiss, Exposito states that her "use of the term 'Bacardi'" in the above quoted paragraph "was not intended to refer to all three Bacardi Defendants." Dkt 70-2, Second Declaration of Lynette Exposito ("Exposito Decl. II.") ¶¶ 4–7. Exposito further attests, "[f]or avoidance of doubt," that "Bacardi Limited did not participate in the development, launch, marketing or sales related to BACARDI UNTAMEABLE marketing campaign in the United States." Id. ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  '**O**'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. |

- Dmitry Ivanova, former chief marketing officer of Bacardi, stated in an interview with an online news source that Facundo L. Bacardi—Chairman of the Bacardi Limited board of directors, "has been highly invested in the creation of the" Untameable campaign.  Id. ¶¶ 6–7 & Exs. 7, 8.

On the basis of this evidence, Lodestar contends that Bacardi Limited exercised control over the global marketing using the BACARDI UNTAMEABLE mark.  Opp'n to Bacardi MTD at 19.  Lodestar further argues that the Untameable campaign was an intentional act expressly aimed at California through advertisement on social media and through a bus tour that stopped in Los Angeles.  Id. at 20.

Bacardi Limited argues that the Court may not exercise personal jurisdiction over it merely because the Court has jurisdiction over Bacardi Limited's subsidiaries.  See Bacardi MTD at 8.  Bacardi Limited is correct that a parent-subsidiary relationship does not provide grounds for imputing the California contacts of a subsidiary to its parent.  See Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) ("[T]he existence of a parent-subsidiary or mere sister-sister entity relationship is not sufficient to establish personal jurisdiction over the parent [or sister entity] on the basis of the subsidiaries' minimum contacts with the forum." (quotation marks omitted)); Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985) (the existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent based on the subsidiaries' minimum contacts with the forum).  Bacardi Limited further argues that Lodestar may not take advantage of the two exceptions to the rule against attributing a subsidiary's contacts to the parent for jurisdiction: the alter ego and agency doctrines.  Bacardi MTD at 8–9.  However, Lodestar clarifies that it "does not allege that Bacardi Ltd. is merely the alter ego of its subsidiary companies based on financing, overlapping directors and officers, and alleged undercapitalization."  Opp'n to Bacardi MTD at 21.  Rather, Lodestar contends that "Bacardi Ltd. itself is a direct infringer of the mark, such as by using the mark in commerce in the U.S. as declared by Bacardi Ltd.'s own in house witness. Bacardi Ltd. controls the global marketing of the BACARDI UNTAMEABLE mark." Id.  To the extent that specific acts directed at California consumers were performed by other Bacardi entities, Lodestar argues that "such activities were undertaken as agents of Bacardi Ltd.'s global marketing programs."  Id.

In Daimler AG v. Bauman, 134 S. Ct. 746 (2014), the Supreme Court invalidated the Ninth Circuit's agency test—articulated in Doe v. Unocal Corp., 248 F.3d 915 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

Cir. 2001)—for the purposes of general jurisdiction, holding it "stacks the deck, for it will always yield a pro-jurisdiction answer." Daimler 134 S. Ct. at 759. However, Daimler left open the possibility that an agency analysis may be relevant in the specific jurisdiction context. Id. at 759 n.13 ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction."). After Daimler, the Ninth Circuit concluded that the Daimler Court's disapproval of the Ninth Circuit's agency test also applies in the context of specific jurisdiction: "[T]he Daimler Court's criticism of the Unocal standard found fault with the standard's own internal logic, and therefore applies with equal force regardless of whether the standard is used to establish general or specific jurisdiction." Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024 (9th Cir. 2017); see also Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co., No. 13-cv-01180-BLF, 2015 WL 4755335, at *5 (N.D. Cal. Aug. 11, 2015) ("the rationale set forth in Daimler—that the Ninth Circuit's agency test inappropriately "stacks the deck"—would seem to undermine application of the Unocal agency test even in specific jurisdiction cases."); Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (agreeing with Los Gatos). Following Williams, the Court concludes that Lodestar cannot establish specific personal jurisdiction pursuant to an agency relationship.

Nevertheless, the Court agrees with Lodestar that Exposito's statements in her first declaration demonstrate that Bacardi Limited itself committed intentional acts. Exposito stated under penalty of perjury that she used the term "Bacardi," to include Bacardi Limited. Exposito Decl. I. ¶ 1. Exposito further described "Bacardi's" use of the BACARDI UNTAMEABLE mark, the launch of the Untameable marketing campaign, and spending on advertising in the United States featuring the BACARDI UNTAMEABLE mark. Id. ¶ 5. Defendants relied on Exposito's statements in their motion to transfer. See Dkt. 42 at 2–3 ("Bacardi then began using the BACARDI UNTAMEABLE mark to promote the sale of its products in November 2013. (Exposito Decl. at ¶ 5). . . . . During the first four months of the launch of the advertising campaign that features the BACARDI UNTAMEABLE mark, Bacardi spent over $14 million in advertising in the U.S. featuring the BACARDI UNTAMEABLE mark. (Id.).").
"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 228 (2000). "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)). Three factors "typically inform the decision whether to apply the doctrine in a particular case," namely:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

[1] a party's later position must be clearly inconsistent with its earlier position . . . [2] courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . [and 3] whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire, 532 U.S. at 750. Bacardi Limited and Exposito's position in support of the motion to dismiss is clearly inconsistent with their earlier position, which the Court previously accepted. Indeed, the Florida Court concluded that this Court found a transfer to be proper in part "based on these representations." Florida Order at 4. If Bacardi Limited were not estopped from arguing that it did not itself use the BACARDI UNTAMEABLE mark, Bacardi Limited will have gained an unfair advantage. Bacardi Limited is therefore judicially estopped from arguing that it did not itself use the BACARDI UNTAMEABLE mark. See Playfair v. South Lemhi Sch. Dist. 292 Bd. of Trs., No. 09-cv-375-BLW, 2010 WL 1138958, at *4 (D. Idaho Mar. 20, 2010) (finding defendants judicially estopped from claiming that plaintiff received fair process when she was terminated at board meeting because they previously submitted affidavit claiming that she had not been terminated at that meeting); Ross v. Ortiz, No. 10-cv-1606-SJO-JPR, 2013 WL 3923487, at *3 (C.D. Cal. July 29, 2013) ("because the Magistrate Judge relied on that admission . . . Plaintiff is likely judicially estopped from asserting an inconsistent but more advantageous position here"), aff'd, 587 F. App'x 434 (9th Cir. 2014). Accordingly, the Court concludes that Bacardi Limited's conduct with respect to the Untameable advertising campaign constituted intentional acts. See Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc., 170 F. Supp. 3d 1249, 1260 (C.D. Cal. 2016) (finding that defendant "committed an intentional act in its creation of the advertising campaign"), amended on other grounds, No. 15-cv-05024-DDP-E, 2016 WL 4134495 (C.D. Cal. Aug. 1, 2016).

The Court next considers whether the acts of Bacardi Limited were expressly aimed at California. Lodestar presents evidence that the Bacardi Untameable campaign specifically targeted California. See dkt. 46-2, Ex. 1 (image from the BUSA Instagram account featuring a photograph of the Bacardi Untameable bus and a caption stating: "Hello from the Hills! The Bacardi Untameable Tour is making its way through LA"); dkt. 46-2, Ex. 2 (image from the Bacardi Twitter account featuring a photograph of the Bacardi Untameable bus and a caption stating: "Hey LA! The #BacardiTour is in town"); dkt 46-2, Ex. 3 (screenshot from a website describing an October 19, 2015 event during

**CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

which "Bacardi hosted the third of the Untameable Artist Series with a celebration . . . in the Hollywood Hills"). Directing advertisements to consumers in California constitutes "express aiming" at the forum state. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020–21 (9th Cir. 2002) (concluding that plaintiff sufficiently alleged "express aiming" by alleging that defendant targeted consumers in the forum with different kinds of advertisements). Bacardi Limited does not address the question of express aiming. The Court therefore finds that Bacardi Limited's conduct was intentionally aimed at California.

The Court next considers whether Bacardi Limited's conduct caused foreseeable harm in California. The injury in a trademark infringement case is the damage to the trademark owner's reputation. See AuTomotive Gold Inc. v. Volkswagen of Am., Inc., 603 F.3d 1133, 1137 (9th Cir. 2010). "Economic loss caused by intentional infringement of a plaintiff's trademark is foreseeable[.]" Wine Grp. LLC v. Levitation Mgmt., LLC, No. 2:11-cv-1704-WBS-JFM, 2011 WL 4738335, at *5 (E.D. Cal. Oct. 6, 2011). Therefore, the Court concludes that it was foreseeable that Lodestar's loss would be inflicted in California.

In sum, the Court concludes that Lodestar has presented a prima facie case of purposeful direction by Bacardi Limited sufficient to withstand a motion to dismiss for lack of personal jurisdiction.

### b.      "But for" Causation

The Court next considers whether Lodestar's claims arise out of or result from Bacardi Limited's forum-related activities. "To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test." Unocal, 248 F.3d at 924. Lodestar argues that their trademark infringement and unfair competition claims arise from "the specific targeting of consumers in this District for the BACARDI UNTAMEABLE mark." Opp'n to Bacardi MTD at 20–21. Bacardi Limited contends that Lodestar's claims arise "irrespective" of Bacardi Limited because Bacardi Limited did not use the trademark and was not "involve[ed] in the development, launch, marketing, or sales related to the trademark that is the subject of this action. Bacardi MTD at 7. However, as described above, Bacardi Limited is estopped from making such an argument. The Court therefore concludes that Lodestar has presented a prima facie case that its claims arise out of Bacardi Limited's forum-related activities.

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

### c.      Reasonableness

The final requirement for specific jurisdiction is reasonableness.  Because Lodestar has satisfied the first two prongs of the specific jurisdiction test, Bacardi Limited bears the burden of "present[ing] a compelling case" that the exercise of jurisdiction is not reasonable.  Schwarzenegger, 374 F.3d at 802.  The reasonableness determination requires the consideration of seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  Roth, 942 F.2d at 623; Bancroft, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476).  Bacardi Limited argues that the exercise of specific jurisdiction over it would be unreasonable "[g]iven the lack of any connection, let alone substantial connection, between Bacardi Ltd. and California[.]"  Bacardi MTD at 7.  Bacardi Limited focuses only on the first factor – the extent of their interjection into the forum state.  "This is inadequate to discharge Burger King's requirement that the defendant demonstrate a 'compelling case,' focused on the seven specific factors listed above, in order to establish unreasonableness."  Bancroft, 223 F.3d at 1089.  Bacardi Limited has not demonstrated any hardship or any other specific factor suggesting that jurisdiction in California would be unreasonable.  Accordingly, the Court finds that the reasonableness requirement is met.

Because the three-part test for specific jurisdiction has been satisfied, the Court concludes that it may exercise jurisdiction over Bacardi Limited.  The Court therefore **DENIES** Bacardi Limited's Rule 12(b)(2) motion to dismiss.

### 2.      Adequacy of Lodestar's Claims

Bacardi Limited argues that Lodestar fails to state on claim on which relief may be granted for two reasons.  First, Bacardi Limited argues that Lodestar's claims against Bacardi Limited are predicated on a reference to the "Bacardi Global Marketing Principles," which appear in the 2014 Corporate Responsibility Report (the "Report").  Bacardi MTD at 12.  Bacardi Limited refers to the following allegations in Lodestar's complaint:

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

On information and belief, Bacardi's marketing strategies are controlled by parent company Bacardi Limited at least through its "Bacardi Global Marketing Principles." On information and belief, Bacardi Limited is responsible for training its commercial teams and employees on marketing principles and for holding employees accountable for complying with marketing principles, including taking corrective actions for violations of its marketing principles.

Parent company Bacardi Limited asserts that it has "robust processes in place to review and approve marketing materials" for Bacardi products including Bacardi rum. Bacardi Limited claims to have introduced a "marketing compliance approval process" around their various advertising campaigns.

On information and belief, parent company Bacardi Limited is the entity which enforces its global marketing principles for the Bacardi companies, including enforcing that "[a]ll Bacardi companies and employees must comply with the laws . . . applicable to their marketing and promotional practices" including U.S. federal law such as the Lanham Act and California law. On information and belief, Bacardi Limited is also responsible for ensuring that "none of our communications attempt to mislead our consumers."

Compl. ¶¶ 17–19. Bacardi Limited argues that the Global Marketing Principles "have nothing to do with substantive marketing strategy, advertising campaigns, use of the trademark at issue or any other issue that is the subject of this action." Id. at 8; see also Reply ISO Bacardi MTD at 11. Bacardi Limited has submitted the 2014 Global Corporate Responsibility Report for the Court's review, see dkt. 71-1 ("Report"), because the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998). The Court notes that, as Lodestar alleges, the Report in fact states: "We have robust processes in place to review and approve marketing materials." Report at 20. Furthermore, having reviewed the Report, the Court cannot conclude that it "contradict[s]" the complaint. See Steckman, 143 F.3d at 1295–96 (9th Cir. 1998). Whether the defendants' marketing strategies are actually controlled by Bacardi Limited "at least through" the Global Marketing Principles, see Compl. ¶ 17, is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

question of fact, and the Court takes Lodestar's factual allegations as true for the purposes of a Rule 12(b)(6) motion to dismiss.

Second, Bacardi Limited contends that it did not file the trademark application at issue in this action and did not use the mark in connection with the import, offer for sale, and sale of rum products in the United States. Bacardi MTD at 12. As a result, Bacardi Limited argues that there is no basis for its liability for trademark infringement or unfair competition claims arising from a trademark. Id. However, the Court has already concluded that Bacardi Limited is judicially estopped from arguing that it did not itself use the BACARDI UNTAMEABLE mark. Furthermore, Lodestar, has pleaded that Bacardi Limited devised and implemented the allegedly infringing Untameable marketing campaign and that BUSA uses this strategy in the United States "in connection with import, offer for sale, sale of rum products in the United States." Compl. ¶ 21. Bacardi Limited disputes this characterization of its responsibility for its subsidiaries. See Bacardi MTD at 12, Reply ISO Bacardi MTD at 11–12. However, the Court takes Lodestar's allegations as true for the purposes of a Rule 12(b)(6) motion to dismiss.

Accordingly, the Court finds that Lodestar has adequately pleaded its claims against Bacardi Limited. The Court therefore **DENIES** Bacardi Limited's Rule 12(b)(6) motion to dismiss.

### C. Lodestar's Motion to Dismiss Counterclaims

Plaintiffs argue that BUSA and BCL (collectively, "counterclaimants") fail to allege any plausible factual basis to support the counterclaims for cancellation of Lodestar's marks. Lodestar MTD at 1. "A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint." PageMelding, Inc. v. ESPN, Inc., No. 11-cv-06263-WHA, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012). To plead abandonment of a trademark under the Lanham Act, counterclaimants must allege: "(1) discontinuance of trademark use, and (2) intent not to resume use." Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1247 (9th Cir. 2013). "Intent not to resume may be inferred from circumstances" or "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. "'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." Id. Having carefully reviewed counterclaimants' allegations, the Court concludes that counterclaimants have adequately pleaded facts sufficient to support their claims for

**CIVIL MINUTES – GENERAL     'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

abandonment.  While the USPTO's acceptance of the '238 and '239 Marks may serve as a defense to the counterclaims, the Court finds that question of abandonment are more properly decided on a motion for summary judgment.  Accordingly, the Court **DENIES** Lodestar's motion to dismiss the counterclaims.

Lodestar alternatively requests that the Court strike any factually unsupported theories of abandonment.  Lodestar MTD at 7.  A motion to strike material from a pleading is made pursuant to Federal Rule of Civil Procedure 12(f).  Under Rule 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous."  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993).  A motion to strike is a matter of the district court's discretion.  Griffin v. Gomez, No. 98-cv-21038-JW, 2010 WL 4704448, at *4 (N.D. Cal. Nov. 12, 2010).  Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored.  Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  "Before a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).  Given that the Court has denied Lodestar's motion to dismiss the counterclaims, the Court is not convinced that there are no circumstances under which the counterclaims can succeed.   Accordingly, the Court **DENIES** Lodestar's motion to strike.

## IV.    MOTION FOR SANCTIONS

### A.    Legal Standards

#### 1.    Sanctions Pursuant to the Court's Inherent Power

District courts have "the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).  Sanctions pursuant to the Court's inherent authority "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id. at 994.  However, these sanctions are only available "if the court specifically finds bad faith or conduct tantamount to bad faith." Id.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|-------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

"For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." Id. at 992 (quotation marks omitted).  A court may assess attorneys' fees pursuant to its inherent power when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258–59 (1975)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Id. at 44.

### 2.     Sanctions Pursuant to 28 U.S.C. § 1927

Any "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[D]amages under section 1927 are appropriate where there is no obvious violation of the technical rules, but where, within the rules, the proceeding is conducted in bad faith for the purposes of delay or increasing costs." Matter of Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986). The statute "applies only to unnecessary filings and tactics once a lawsuit has begun." In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 435 (9th Cir. 1996). "Recklessness suffices for § 1927 sanctions, but sanctions imposed under the district court's inherent authority require a bad faith finding." Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1219 (9th Cir. 2010); see also B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002), as amended (Feb. 20, 2002) ("[W]e conclude that the district court's finding of recklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions.").

The decision to sanction a party under Section 1927 rests in the sound discretion of the district court. Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir. 1990) (noting district court's award of sanctions pursuant to Section 1927 is reviewed for abuse of discretion); see also MGIC Indemnity Corp. v. Moore, 952 F.2d 1120, 1121 (9th Cir. 1991) (holding district court abused its discretion by awarding Section 1927 sanctions); Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1996) (holding district court abused its discretion by not awarding Section 1927 sanctions where attorney's conduct—i.e., his "intentional disregard" of his clients' "express instructions" to be dismissed from the suit and his "continued insistence that he represented persons who he was not authorized to

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|---|---|---|---|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

represent"—were "reckless as a matter of law"). Moreover, Section 1927 sanctions must be tailored to the particular challenged conduct. <u>See, e.g.</u>, <u>United States v. Blodgett</u>, 709 F.2d 608, 610–11 (9th Cir. 1983) ("Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct.").

### 3.    Sanctions Pursuant to the Local Rules

Central District of California Local Rule 11-9 provides: "The presentation to the Court of frivolous motions or opposition to motions (or the failure to comply fully with this rule) subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7." C.D. Cal. L.R. 11-9. Local Rule 83-7 provides:

> The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:
> (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;
> (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or
> (c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

C.D. Cal. L.R. 83-7.

### B.    Discussion

Lodestar requests that the Court impose sanctions on the basis of defendants' misrepresentations to the Court related to defendants' motion to transfer this action. Sanctions Mot. at 1. Namely, Lodestar contends that it was unreasonable for defendants to file a motion to transfer this action to the Southern District of Florida when defendants were aware that the transferee court must have personal jurisdiction over all defendants in order for transfer to be proper *and* defendants believed that the Southern District of Florida could not exercise personal jurisdiction over Bacardi Limited. <u>Id.</u> at 1–3. In addition, Lodestar also contends that defendants' ex parte application to extend the deadline for responding to the complaint until *after* this Court ruled on the motion to transfer appears to have been an attempt to conceal Bacardi Limited's personal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

jurisdiction defense until after the transfer issue was decided. Id. at 4. The Florida Court concluded that defendants "made two important and material representations to" this Court:

> First, the Bacardi Entities stated that the "Southern District of Florida could exercise personal jurisdiction over Bacardi," which was defined to include "Bacardi & Company Limited, Bacardi U.S.A, Inc. and Bacardi Limited" (i.e., all three Defendants), because BUSA's principal place of business in the United States is Miami, Florida.
>
> Second, the Bacardi Entities stated that Bacardi which, again, was defined to include all three Defendants: (1) "us[ed] the BACARDI UNTAMEABLE mark to promote the sale of its products in November 2013;' (2) spent over $14 million in advertising the BACARDI UNTAMEABLE mark, including featuring the mark in national media campaigns; and (3) "use[d] a Miami-based distributor . . . to sell its product to retailers."

Florida Order at 3–4 (citations omitted). The Florida Court found that this Court transferred the action "based on these representations," which the Florida Count found "misleading." Id. at 4, 15. After transfer to the Southern District of Florida, Bacardi Limited filed a motion to dismiss Lodestar's claims for lack of personal jurisdiction over Bacardi Limited. Id. at 5. Lodestar seeks sanctions pursuant to 28 U.S.C. § 1927 because defendants "unreasonably and vexatiously" increased Lodestar's legal fees by seeking to transfer to the Southern District of Florida then later claiming that the Southern District of Florida never had personal jurisdiction over Bacardi Limited. Sanctions Mot. at 15. Lodestar seeks sanctions pursuant to the Court's inherent powers because defendants' motion to transfer was made in bad faith. Id. at 15–16. Finally, Lodestar argues that sanctions are warranted pursuant to Local Rules 11-9 and 83-7 because the motion to transfer was frivolous. Id. at 16. Lodestar thus seeks reimbursement for all legal fees and costs associated with:

> (1) opposing the Bacardi Entities' original motion to transfer this case to Florida;
> (2) the preparation and filing of Lodestar's subsequent motions for reconsideration and to retransfer this case back to California along with the costs associated with litigating in Florida;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|-------------------------|------|-----------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

(3) opposing the Bacardi Entities' ex parte application for extending the time to answer until after the original motion to transfer was decided;
(4) opposing the Bacardi Entities' motion to dismiss for lack of personal jurisdiction that was filed in Florida; and
(5) the preparation and filing of this instant motion for sanctions, the drafting and filing of the anticipated Reply Brief, and attendance at the upcoming oral hearing.

Id. at 1, 10. Lodestar has expended $105,491.50 in legal costs and fees for this work. Id. at 16; see dkt. 69-2, Declaration of Gary J. Nelson ("Nelson Decl.") ¶¶ 3–6.

In addition, Lodestar requests that the Court revoke the pro hac vice status previously granted to defendants' counsel. Sanctions Mot. at 1. "Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct." Standing Committee on Discipline v. Ross, 735 F.2d 1168, 1170 (9th Cir. 1984). That power "necessarily encompasses the authority to suspend an attorney admitted pro hac vice from further practice before the court." Dacosta v. Novartis AG, Novartis Pharm. Corp., 242 F. Supp. 2d 765, 772 (D. Or. 2002) (quotation marks omitted)).

Defendants argue that sanctions are not appropriate for three reasons. First, defendants argue that they did not deliberately make any misrepresentations to this Court. Sanctions Opp'n at 11–14. Specifically defendants contend that they "never represented that personal jurisdiction was proper over all three defendants in the Southern District of Florida," id. at 14, because they stated in the motion to transfer that "the Southern District of Florida could exercise personal jurisdiction over Bacardi because *Bacardi U.S.A.'s* principal place of business in the U.S. is Miami, Florida." Dkt. 42 at 5 (emphasis added). Second, pointing to case law suggesting exceptions to the rule that the transferee court must have personal jurisdiction over all defendants, defendants contend that transfer *was* appropriate because the action could have been brought in the Southern District of Florida. Sanctions Opp'n at 14–17. Finally, defendants argue that sanctions are not warranted under Section 1927, the Court's inherent power, or the local rules, because Lodestar has not demonstrated bad faith. Id. at 17–21. At oral argument, counsel for defendants argued that this Court should not rely solely on the Florida Order. Counsel also argued, and the Court notes, that the Florida Court did not make an express finding regarding bad faith.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-06411-CAS(FFMx) | Date | August 14, 2017 |
|----------|--------------------------|------|------------------|
| Title | LODESTAR ANSTALT v. BACARDI & CO. LTD. ET AL. | | |

The Court reserves judgment on Lodestar's motion for monetary sanctions until the conclusion of the case.  The Court **DENIES** without prejudice Lodestar's request to revoke the pro hac vice status of defendants' counsel.

## V.     CONCLUSION

In accordance with the foregoing, the Court **DENIES** Bacardi Limited's motion to dismiss Lodestar's complaint.  In addition, the Court **DENIES** Lodestar's motion to dismiss BUSA and BCL's counterclaims and **DENIES** Lodestar's motion to strike.

The Court **DENIES** without prejudice Lodestar's request to revoke the pro hac vice status of defendants' counsel.  Finally, the Court reserves judgment on Lodestar's motion for monetary sanctions until the conclusion of the case.

IT IS SO ORDERED.

|  | 00 | 24 |
|---|---|---|
| Initials of Preparer | | CMJ |